DODSWORTH PEACOCK, RALPH W. PEACOCK and others, heirs of RALPH PEACOCK, deceased, *v.* JOSEPH WILDES.

CERTIORARI TO COMMON PLEAS OF BURLINGTON.

A writ of foreign attachment cannot issue for the creditor of a deceased debtor against the heir of such debtor.

A writ of foreign attachment issued out of the Court of Common Pleas of the county of Burlington, directing the sheriff of that county to attach Dodsworth Peacock, Ralph W. Peacock, G. S. Peacock, and others, children and heirs of Ralph Peacock, deceased, by all their goods and chattels, lands, tenements, &c., to answer Joseph Wildes in a plea of trespass on the case upon promises, to his damage $1,800; and was founded upon an affidavit (made and filed on the same day that the writ issued) in substance as follows: "That Dodsworth Peacock, Ralph W. Peacock, &c., children and heirs of Ralph Peacock, deceased, are justly indebted to this affirmant, (Joseph Wildes) in the sum of $1,225." Upon this writ the sheriff made return, "that he had attached the defendant's tract of land, situate in the township, &c., (describing it) valued at $750." The proceedings on the attachment before the Common Pleas were carried on in the usual manner. The auditors made their report, that "there was due unto the plaintiff from Ralph Peacock, deceased, $1,098.59; and upon this report final judgment was entered against the defendants as heirs of Ralph Peacock, deceased, in the term of August, 1819.

These proceedings in attachment having been brought into the Supreme Court by certiorari; *W. Halstead,* for the plaintiffs in certiorari, moved to reverse the judgment of the Court of Common Pleas, and relied upon a variety of reasons in support of his motion, of which it is necessary only to notice the one upon which the court founded its opinion.

He contended, that an attachment would not lie against an heir for a debt of his ancestor. This position he said was supported by the phraseology of the statute, by general principles, and by analogy.

1. The words of the statute, (*Rev. Laws* 335, *sec.* 1,) " That if any creditor shall make oath, &c., that his *debtor* absconds from his creditors, &c., it shall be the duty of the clerk to issue a writ to the sheriff, commanding him to attach the rights and credits, lands and tenements, &c., of *such debtor.*" The heir cannot be considered under this statute as the debtor of his ancestor's creditor ; for thus to consider him would be to make him liable at all events for the debt of his ancestor whether he had land by descent or not.

2. Upon general principles, an attachment can be issued in no case except where the person against whom it is issued, might, if resident in this state, be held to bail.

The only object of the attachment is, to compel the defendant's appearance to the action, *Carth.* 26 ; and the only method of dissolving an attachment regularly issued, is by putting in special bail. *Rev. Laws* 358, *sec.* 16. *Sergeant on attachment* 131—2. 1 *Dal.* 218, 2 *ib.* 73, 79.

Without bail, an appearance will not be accepted, 1 *Com. Dig.* 721, *tit. attach. note.* The law therefore never intended to expose any person to a proceeding by attachment, who could not be holden to bail ;. and as an heir cannot be arrested or held to bail for a debt of his ancestor, 1 *Arch. Prac.* 45, 3 *Bl. Com.* 292, it would seem to follow as a necessary consequence, that an attachment could not issue against him. If it may, he is placed in this dilemma ; he must either appear and enter into special bail, (the effect of which would be to make him absolutely liable for the payment of the debt,) or if he fail to appear and put in special bail, judgment would be rendered against him, and all his own property might be sold although he had never received a farthing from his ancestor.

Peacocks *v.* Wildes.

3. Reasons may also be drawn from analogous cases to support the position contended for. It has been decided that an attachment will not lie against an executor. 2 *Dal. Rep.* 73, 79, 4 *ibid.* 60; 1 *Rol. Rep.* 105; 1 *Rol. Abr.* 551–2; *Serg. Att.* 61, 123; 1 *John. Ca.* 375; 1 *Con. Rep.* 385; and the reason no doubt is, because it would be inconsistent with the policy of our laws in regard to the distribution of the estates of decedents and the duties of executors. In making distribution of the estate certain preferences are directed by our statute to be given, which are utterly irreconcilable with the distribution under the attachment which divides the property *pro rata* among the applying creditors. The same reason applies with equal force to heirs. For by our statute (*Rev. Laws* 291, sec. 1,) " all such creditors shall be *preferred* as in actions against executors or administrators."

*Wall,* contra, cited 1 *Bac. Abr.* tit, heir, *Let. G.* 464 and *Rev. Laws* 361.

The *Chief Justice,* having been concerned as counsel, did not sit on the argument of the cause, and *Justice Rossell,* having been compelled to leave the court to attend a circuit court, the cause was argued before *Justice Ford* alone, who declared it his opinion, that a writ of attachment could not issue against an heir for the debt of his ancestor. For it was obvious he said from the policy and plain language of the act, that the defendant could dissolve the attachment only by coming in and filing special bail. The heir therefore could not be discharged unless upon filing special bail, which could not be required of an heir when sued for the debt of his ancestor.

Therefore let the judgment of the Common Pleas be reversed and the proceedings set aside.